**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| ROBERT AND GENEVIEVE MARTIN, | ) |
| Husband and Wife | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES OF AMERICA, | ) |
| | ) |
| CHARLES D. COLEMAN, and | ) |
| The Unknown Heirs of | ) |
| CHARLES D. COLEMAN, | ) |
| | ) |
| RICHARD CAULK, and | ) |
| The Unknown Heirs of | ) |
| RICHARD CAULK, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

COME NOW Plaintiffs Robert and Genevieve Martin (collectively, "Plaintiffs"), by and

through their attorneys, Kurt A. Voss and Tyler J. Miller of Zick, Voss, Politte, Richardson &

Brinker, P.C., and for their Complaint pursuant to 28 U.S.C. § 2409a state:

1.      Robert and Genevieve Martin, husband and wife, (the "Martins") are a married

couple residing in Gasconade County at 4563 Highway B, Bland, Missouri 65014.

2.      Plaintiffs Robert and Genevieve Martin own real property commonly known as

4563 Highway B, Bland, Gasconade County, Missouri 65014 (the "Property"), with the

following legal description:

> The North half of the Southwest quarter being West of Missouri Route "B" in Section 22,
> Township 40 North, Range 6 West, Reference being made to Preliminary Plat by
> Gasconade County Land Surveying, January 11, 2006
>
> Subject to: deed restrictions, easements, rights of way of record, and zoning regulations.
> Locator Number: pt. of 21-5.0-22-0-00-008.00

3.     Defendant United States of America ("USA") is a party defendant to this action as the USA is an alleged claimant to interest in the property at issue.

4.     This Court has subject matter jurisdiction over the parties and subject matter pursuant to 28 U.S.C. § 2409a.

5.     This Court has personal jurisdiction over the parties to this action.

6.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), as the property at issue is located within the Eastern District of Missouri.

7.     On or about March 17, 2006, Plaintiffs and Paul G. Safarik and Patricia S. Safarik acquired titled to the Property, by a General Warranty Deed recorded with the Gasconade County Recorder of Deeds as Document No. 2006-981 (the "Plaintiffs' Warranty Deed") from grantors David and Patricia Fischer.  *See* General Warranty Deed, attached hereto and incorporated by reference as **EXHIBIT 1**.

8.     On or about July 13, 2026, Co-owner Paul G. Safarik, surviving spouse of Patricia S. Safarik who died on February 18, 2026, deeded all of their interest in the Property to Plaintiffs. *See* Quit-Claim Deed, attached hereto and incorporated by referenced as **EXHIBIT 2.**

9.     By virtue of the deeds described in the immediately preceding paragraphs, Plaintiffs are the only owners in fee simple absolute of the Property.

10.     On or around June 7, 1847, the USA issued a Land Patent to Richard Caulk ("Caulk") as Certificate No. 126 ("Caulk Land Patent"), granting Caulk a Land Patent that encompasses the Property in question.  *See* Land Patent to Caulk, attached hereto and incorporated by reference as **EXHIBIT 3**.

11.     On or about May 3, 1858, the USA issued a Land Patent to Charles D. Coleman ("Coleman") as Certificate No. 29467 ("Coleman Land Patent"), granting Coleman a Land

Patent to the same land described in the Caulk Land Patent. *See* Land Patent to Coleman, attached hereto and incorporated by reference as **EXHIBIT 4**.

12. Some time after the Coleman Land Patent was issued by the USA, a written statement was placed on the Coleman Land Patent, with a handwritten notation, "Cancelled per letter to R&R 23 August 1860." *See* Written Statement, attached hereto and incorporated by referenced as **EXHIBIT 5**.

13. Upon information and belief, the Caulk Land Patent was recorded some 148 years later with the Gasconade County Recorder of Deeds on September 8, 1995, at Book 294, Page 837, granting Caulk an interest in the Property.

14. On or about June 13, 1866, the Registrar of Lands recorded a Tax Deed to Jordan Jacob. *See* Deed to Jordan Jacob, attached hereto and incorporated by reference as **EXHIBIT 6**.

15. A plat map, published in 1875, names "Masser" and "McElhinney" as the owners of record of the Property. *See* Plat Map of 1875, attached hereto and incorporated by reference as **EXHIBIT 7**.

16. All right, title and interest to the Property has vested in Plaintiffs by reason of above chain by the aforementioned Plaintiffs' Warranty Deed.

17. In August 2024, the Plaintiffs applied for a loan with a local bank.

18. The ALTA Commitment for Title Insurance for the loan contained a provision alleging that the USA has some interest in the title to the Property. *See* ALTA Title Insurance Commitment, attached hereto and incorporated by reference as **EXHIBIT 8**.

19. Due to the conflicting land patents (Caulk and Coleman), Defendant USA may have some estate, right, title, lien or interest in or to the Property adverse to Plaintiffs' title, and said claim or claims, constitute a cloud on Plaintiffs' title to the Property.

20.     Defendant Caulk and his unknown heirs, devisees, legatees, donees, voluntary or involuntary grantees or assigns, and each of them may claim some estate, right, title, lien or interest in or to the Property adverse to Plaintiffs' title, and said claim or claims, constitute a cloud on Plaintiffs' title to the Property until the competing land patents to the Property are resolved and quieted.

21.     Defendant Coleman and his unknown heirs, devisees, legatees, donees, voluntary or involuntary grantees or assigns, and each of them may claim some estate, right, title, lien or interest in or to the Property adverse to Plaintiffs' title, and said claim or claims, constitute a cloud on Plaintiffs' title to the Property until the competing land patents to the Property are resolved and quieted.

22.     Plaintiffs request this Court enter its Judgment quieting title in Plaintiffs.

23.     Plaintiffs further request this Court enter its Judgment declaring that the Caulk Land Patent as having been properly given to Caulk, confirming that the USA has no further interest in the Property, and declaring that the Coleman Land Patent is null and void and does not effect the Property.

WHEREFORE, Plaintiffs Robert and Genevieve Martin respectfully request this Court enter its Judgment as follows:

a.     for an Order declaring that Plaintiffs are now the owners in fee simple absolute of the Property by means of the title having been conveyed from David and Patricia Fischer to Plaintiffs;

b.     for an Order quieting title in Plaintiffs' names alone;

c.     for an Order restraining and enjoining Defendants, or any person claiming by or through Defendants, from claiming an interest in the Property;

- 4 -

d.     that the Court enter its Judgment directing all Defendants and any person claiming by, through or under them be required to set forth the nature of their claim of said Property;

e.     that adverse claims to said Property be determined by a Judgment of this Court;

f.     that said Judgment declare and adjudge that Plaintiffs own the Property in fee simple absolute and are entitled to the quiet and peaceful possession thereof;

g.     declaring that the United States of America has no interest in the Property;

h.     declaring the Caulk Land Patent as valid and properly issued for the Property;

i.     declaring the Coleman Land Patent null and void as to the Property;

j.     declaring that Defendants or any person claiming by, through or under them have no estate, right, title, lien, or interest in or to the Property or any part thereof; and

k.     for such other and further Orders as this Court considers appropriate under the circumstances.

Dated: August 7, 2026.

*[Signature Page to Follow]*

- 5 -

- 6 -

Respectfully submitted,

ZICK, VOSS, POLITTE, RICHARDSON & BRINKER
A Professional Corporation

By: _____
Kurt A. Voss, # 36668MO
Tyler J. Miller, # 76705MO
438 West Front Street
P.O. Box 2114
Washington, MO  63090
Phone (636)239-1616
Fax (636)239-5161
kav@zvplaw.com
tjm@zvplaw.com
*Attorney for Plaintiffs*

STATE OF MISSOURI )
                          ) ss
COUNTY OF FRANKLIN )

        Robert Martin and Genevieve Martin being of age and being first duly sworn upon their oath, state they are the Plaintiffs named in the foregoing Complaint, and the facts stated therein are true to their best knowledge, information and belief.

By: _____
     Robert Martin

By: _____
     Genevieve Martin

        Subscribed and sworn to before me on July 31, 2026.

```
MOLLY L. SHAFFAR
NOTARY PUBLIC - NOTARY SEAL
STATE OF MISSOURI
MY COMMISSION EXPIRES MAY 14, 2027
FRANKLIN COUNTY
COMMISSION #15048647
```

_____
Molly L. Shaffar
Notary Public, State of Missouri
Commissioned in Franklin County
Commission # 07048647

My Commission Expires:
May 14, 2027.

W:\L-M-N-O-P\MARTIN\Robert\Gasconade County Property\Complaint.docx

GASCONADE COUNTY, HERMANN, MO                          03/24/2006   #2006-981
JUDITH A SCHULTE, CIRCUIT CLERK & RECORDER             04:10:00PM      1 OF 2



File No. 6-01321

## GENERAL WARRANTY DEED

THIS DEED, made and entered into as of this 17th day of March,2006, by and between **David Fischer and Patricia Fischer,husband and wife**, party(ies) of the first part/Grantor(s) whose mailing address is: 905 Lookout Court Windsor, CO 80550 of the City/County of Larimer, State of Colorado and **Robert A. Martin** and **Genevieve M. Martin,husband and wife** and **Paul G. Safarik** and **Patricia S. Safarik,husband and wife**, party(ies) of the second part/Grantee(s) whose mailing address is: ___1970 Maries Rd 621____Dixon Mo 65459_____ of the County of _____ State of Missouri.

WITNESSETH, that the said party(ies) of the first part, for and in consideration of the sum of One Dollar ($1.00) and other valuable considerations paid by the said party(ies) of the second part, the receipt of which is hereby acknowledged, does or do by these presents GRANT, BARGAIN AND SELL, CONVEY AND CONFIRM unto the said party(ies) of the second part, the following described Real Estate, situated in the **County** of **Gasconade** and State of **Missouri,** to wit:

The North half of the Southwest quarter being West of Missouri Route "B" in Section 22, Township 40 North, Range 6 West, Reference being made to Preliminary Plat by Gasconade County Land Surveying, January 11, 2006

Subject to: deed restrictions, easements, rights of way of record, and zoning regulations.
Locator Number: pt. of 21-5.0-22-0-00-008.000

TO HAVE AND TO HOLD the same, together with all rights and appurtenances to the same belonging, unto the said party(ies) of the second part, and to the heirs and assigns of such party(ies) forever.

The said party(ies) of the first part hereby covenanting that said party(ies) and the heirs, executors and administrators of such party(ies), shall and will WARRANT AND DEFEND the title to the premises unto the said party(ies) of the second part, and to the heirs and assigns of such party(ies) forever, against the lawful claims of all persons whomsoever, excepting, however, the general taxes for the calendar year 2006 and thereafter, and special taxes becoming a lien after the date of this deed.

**EXHIBIT**

1

**GENERAL WARRANTY DEED (Continued)**

IN WITNESS WHEREOF, the said party(ies) of the first part has or have hereunto set their hand or hands the day and year first above written.

David Fischer

Patricia Fischer

STATE OF Colorado                )
                                 )ss.
COUNTY of Weld                   )

On this 15th day of March , 2006, before me personally appeared David Fischer  and Patricia Fischer, husband and wife, to me known to be the person or persons described in and who executed the foregoing instrument, and acknowledged that he / she / they executed the same as his / her / their free act and deed.

**IN TESTIMONY WHEREOF,** I have hereunto set my hand and affixed my official seal in the Weld County / City Windsor and State aforesaid, the day and year first above written.

Kimberly Tulk
Notary Public

My term expires: 10/22/07

KIMBERLY
TULK
NOTARY PUBLIC
STATE OF COLORADO

**2026-2413**

JENNY SCHNEIDER
GASCONADE COUNTY
CIRCUIT CLERK & RECORDER
HERMANN, MO
RECORDED ON
07/21/2026 08:00:04 AM
REC FEE: 27.00
PAGES: 2

## QUIT-CLAIM DEED

This Deed Witnesseth that, on July ___*13*___, 2026, Paul G. Safarik, surviving spouse of Patricia S. Safarik who died on February 18, 2026, of Sedgwick County, Kansas, Grantor, for and in consideration of Ten Dollars ($10) and other good and valuable consideration, in hand paid, does by these presents, REMISE, RELEASE and FOREVER QUIT-CLAIM unto Robert A. Martin and Genevieve M. Martin, Husband and Wife, of 4563 Highway B, Bland, Missouri 65014, collectively Grantee, their heirs or successors and assigns, the following land situated in Gasconade County, Missouri:

The North half of the Southwest quarter being West of Missouri Route "B" in Section 22, Township 40 North, Range 6 West, Reference being made to Preliminary Plat by Gasconade County Land Surveying, January 11, 2006.

Subject to:  deed restrictions, easements, rights of way of record, and zoning regulations.

Locator Number: pt. of 21-5.0-22-0-00-008.000

*THIS DOCUMENT, INCLUDING THE LEGAL DESCRIPTION, WAS PREPARED BY ZICK, VOSS, POLITTE, RICHARDSON & BRINKER, P.C., SOLELY UPON INFORMATION FURNISHED BY THE PARTIES OR THEIR AGENTS, AND WITHOUT TITLE SEARCH OR EXAMINATION, PER THEIR REQUEST.*

TO HAVE AND TO HOLD the same, together with all rights and appurtenances to the same belonging, unto the said Grantee and to the heirs or successors and assigns of such Grantee forever; so that neither the Grantor nor the heirs or successors of the Grantor nor any other persons for or in the name of the Grantor, shall or will hereafter claim or demand any right or title to the aforesaid premises, or any part thereof, but they and every one of them shall by these presents be excluded and forever barred.

_____
PAUL G. SAFARIK

**EXHIBIT**

**2**

*tabbies*

STATE OF KANSAS ）
                        ） ss.
COUNTY OF SEDGWICK ）

On __JULY 13TH__, 2026, before me personally appeared Paul G. Safarik, to me known to be the person described in and who executed the foregoing instrument, and acknowledged that he executed the same as his free act and deed.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year last above written.

NOTARY PUBLIC · State of Kansas
EDNA PATAWARAN
My Appt. Expires November 22, 2028

_Edna Patawaran_
Notary Public, State of Kansas
Commissioned in __SEDGWICK__ County
Commission No. __1225278__

My Commission Expires:
__NOVEMBER 22, 2028__.

W:\L-M-N-O-P\MARTIN\Robert\Gasconade County Property\Quit-Claim Deed.docx

2

*Caulks*
*Land patent* BOOK 294 PAGE 837

# UNITED STATES DEPARTMENT OF THE INTERIOR
## BUREAU OF LAND MANAGEMENT    D-3259
## EASTERN STATES
## 7450 BOSTON BOULEVARD
## SPRINGFIELD, VIRGINIA  22153

  P|Q

SEP - 8 1995
_____
DATE

TO WHOM IT MAY CONCERN:

I HEREBY CERTIFY THAT the attached reproduction(s) is an (extract) copy of document on file in this office.

**IN TESTIMONY WHEREOF** I have hereunto subscribed my name and caused the seal of this office to be affixed on the above day and year.

_____
(Authorized Signature)

FILED FOR RECORD
IN MY OFFICE AT
11 o'clock 50 min. A m.

OCT 1 2 1995

JUDITH A. SCHULTE
Cir. Clk. & Ex-Officio Recorder
Gasconade County, Mo.

EXHIBIT
3

Gasconade County, MO  1995-3259  1 of 4

From page 1 to 377 drawn Nov. 12, 1856                                         161.

BOOK 294 PAGE 838   The United States of America,

To all to whom these presents shall come, Greeting:

Surveyor General's Certificate No. 35 of new location
under Act of 4th of July, 1836.

Whereas, there has been deposited in the General Land Office a Certificate, numbered 35, of the Surveyor General, at St. Louis, Missouri, whereby it appears, that the claim of Richard Caulks, or his legal representatives, is entered as No. 6 in the first class of the Decision of the Board of Land Commissioners in Missouri, under the Acts of Congress of the 9th July, 1832, and the 2d of March, 1833; and that, after a Survey No. 3006, had been executed of the said Claim, it is found, that Two thousand three hundred nine fifteen acres and thirteen hundredths of an acre of the said Survey have been sold or disposed of by the United States; further, that three hundred and fourteen acres and eighty nine hundredths of an acre, of the said tract are included within the limits of Survey No. 1666, of Four hundred and thirty arpens, and forty-two acres and ninety-one hundredths of an acre within Survey No. 1762, of Seven thousand and fifty-six arpens,—Confirmed, respectively, to François Duquette and Peter Provenchere by the Act of Congress of the 29th of April, 1816,— and Sixty-four hundredths of an acre within Survey No. 2812, in the name of Peter Provenchere, for six hundred and forty acres, located in virtue of a New-Madrid Certificate, No. 411, in conformity with the provisions of the Act of Congress of February 17th, 1815;—these interferences and the sales aforesaid making, in all, ten thousand six hundred and seventy-three acres and fifty-seven hundredths of an acre—and that, in virtue of the 2d Section of the Act of Congress, approved 4th of July, 1836, entitled: "An Act confirming Claims to land in the State of Missouri, and for other purposes" the confirmee was entitled, in lieu of the land thus previously disposed of, to a new location on other lands in Missouri subject to entry at private sale; and Whereas, in virtue of the right of new location aforesaid, it appears, from Certificates Nos. 38, 42, 46, 48, 49, 51, 52, 53, 54, 56, 57, 62, 67, 81, 82, 87, 104 and 169, now all dated March 5th, 1856, of the Register of the Land Office at St. Louis, Missouri, as entered on the aforesaid certificate of the Surveyor General, that the following described tracts of land have been located, in part satisfaction thereof, in the district of lands subject to Sale at St. Louis, Missouri, namely: the East half of Lot numbered One of the North West quarter of Section Six; and the East half of Lot numbered Two of the North West quarter of Section Six, in Township Thirty-nine, of Range One West; the North East quarter of the South East quarter of Section Six; the South West quarter of the South West quarter of Section Six, and the North East quarter of the North East quarter of Section Eighteen, in Township Forty, of Range One West; the East half of Lot numbered Three of the North East quarter of Section Five, in Township Thirty-nine, of Range Two West; the North East quarter of the South West quarter of Section Two, the North half of the North West quarter of Section Eleven, the North half of the South East quarter, and the North half of Lot numbered One in the South West quarter of Section Nineteen, the North West quarter of the South West quarter, and the South West quarter of the North West, of Section Twenty, the North West quarter of the South West quarter of Section Twenty-three, and the East half of the North West quarter of Section Twenty-eight, in Township Forty, of Range Two West; the South East quarter of the South East quarter of Section Fifteen, in Township Thirty-nine, of Range Three West; the South East quarter of the South East quarter of Section Nineteen, the South West quarter of the South West quarter of Section Twenty, and

BOOK 294 PAGE 839

the South East quarter of the South West quarter of Section Twenty-one, Township Forty, of Range Two West; the South East quarter of the North East quarter, and the North East quarter of the South West quarter, of Section Eighteen, in Township Forty, of Range Three West; the North West quarter of the South East quarter, the North West quarter of the North East quarter and the South West quarter of the South East quarter, of Section Nineteen, and the North half of the North East quarter of Section Thirty, in Township Forty-one, of Range Three West, or North half of Lot numbered One of the South West quarter of Section Six, in Township Forty-one, of Range Three West; the North East quarter of the South East quarter of Section One, ... the North West quarter of the South East quarter of Section Twenty-one, in Township Forty, of Range Two West; the South West quarter of Section Twenty ...

... North East quarter and the South West quarter of the North West quarter of Section Twenty-five, the South East quarter of the North East quarter of Section Twenty-seven, and the North West quarter of the North West quarter of Section Thirty, in Township Forty, of Range Five West; the South West quarter of the South East quarter of Section Twenty-three, the East half of the South West quarter, the South West quarter of the South East quarter, and the South West quarter of the North East quarter of Section Thirty-five, and the South West quarter of the North West quarter of Section Thirty-six, in Township Forty-two, of Range Two East; the North East quarter of the North East quarter of Section Thirteen, in Township Forty-four, of Range Two East; the South East quarter of the South East quarter of Section Six, and the North East quarter of the North East quarter of Section Seven, in Township Forty-one, — the North East quarter of the North East quarter of Section Thirty-three, in Township Forty-three — the South East quarter of the South West quarter, and the South West fractional quarter of the South East fractional quarter, of Section Fifteen, the North West quarter and the North East quarter of the North West quarter ... the North ... fractional quarter of the North East quarter of Section Twenty-two ... and the West half of the North East quarter of Section Twenty-five, in Township Forty-five, of Range Three East; and the North West quarter of the North West quarter of Section Thirty-four, in Township Thirty-nine, and the North West quarter of the South East quarter of Section Twenty-nine, in Township Forty-four, of Range Four East, — Containing Two thousand three hundred and forty-two acres and forty-seven hundredths of an acre; — and, also, from a Certificate, No. 6, of the Register of the Land Office at Fayette, that the following described tracts have been located in the district of lands subject to sale at Fayette, Missouri — (the aforesaid Certificate of new location being thus fully satisfied) — namely: the South West quarter of Section Twelve, the North West quarter of Section Thirteen, and the West half of the North East quarter of Section Thirteen, in Township Fifty-five, of Range Twenty, Containing Four hundred acres: Said several enumerated entries Comprehending, in the aggregate, Two thousand Seven hundred and forty-two acres and forty-two hundredths of an acre — the Excess of Sixty-eight acres and ninety hundredths of an acre having been paid for, as per Receiver's Receipt No. 22891.

Now Know ye, that the United States of America, in consideration of the premises, and pursuant to the aforesaid Act of Congress of 4th of July, 1836, have given and granted, and by these

Gasconade County, MO   1995-3259   3 of 4

BOOK 294 PAGE 840

565

presents do Give and Grant, unto the said Richard Cauck, or his legal representatives, and to his, or their, heirs, the tracts of land above described: To Have and to Hold the same, together with all the rights, privileges, immunities and appurtenances, of whatsoever nature, thereunto belonging, unto the said Richard Cauck, or his legal representatives, and to his, or their, heirs and assigns forever.

In Testimony Whereof, I, Franklin Pierce, President of the United States of America, have caused these letters to be made Patent, and the Seal of the General Land Office to be hereunto affixed.

Given under my hand, at the City of Washington, the Third day of June, in the year of our Lord One thousand eight hundred and fifty-six, and of the Independence of the United States, the Eightieth.

(L. S.)

By the President: Franklin Pierce
By H. P. Vaccum, asst Secry.
J. N. Granger, Recorder of the General Land Office.

The United States of America,
To all to whom these presents shall come, Greeting:

Surveyor General's Certificate No. 43
(of new location under Act of 4th of July, 1836.)

Whereas, there has been deposited in the General Land Office a Certificate, numbered 43, of the Surveyor General at St. Louis, Missouri, whereby it appears, that the claim of Benito Vasquez, or his legal representatives, is entered as No. 80 in the first class of the Decisions of the Board of Land Commissioners in Missouri under the Acts of Congress of the 9th of July, 1832, and 2d March, 1833, and that after a Survey No. 3011 had been executed for the said claim, it is found that Two hundred and fifty-nine acres and twenty-five hundredths of an acre of the said tract are included in Survey No. 144, of four hundred arpens, Confirmed to Alexander McNair, under John Romaine,— one hundred and thirty-eight acres and forty-seven hundredths of an acre in Survey No. 664, of eight hundred arpens, Confirmed to Alexander McNair, under Christian Romaine,— two hundred and eighty-nine acres and fifty-six hundredths of an acre in Survey No. 1334, of eight hundred arpens, Confirmed to James Clamorgan, Six hundred and seven acres and twenty-six hundredths of an acre in Survey No. 1987, of six hundred and forty acres, Confirmed to John Carpenter's representatives, thirteen acres and eight hundredths of an acre in Survey No. 2001, of three hundred and twenty arpens, Confirmed to John Sanders, alias Sanders,— Six hundred and forty acres in Survey No. 2054, of six hundred and forty acres, Confirmed to Levy Steel,— Two hundred and seventy-two acres and twenty-two hundredths of an acre in Survey No. 3012, of three hundred and twenty arpens, Confirmed to Isaac Hildebrand, or his legal representatives,— and one hundred and fifty-four acres and eighty-four hundredths of an acre in Section Sixteen, in Township Forty-three North, of Range Five East, reserved for the use of Schools; there is thereof remaining, in all, Two thousand three hundred and thirty-four

Gasconade County, MO  1995-3259  4 of 4

198

# THE UNITED STATES OF AMERICA,

CERTIFICATE
No. 27767

To all to whom these presents shall come, Greeting:

Whereas *Charles D Colman of St Louis County Missouri*

ha*s* deposited in the GENERAL LAND OFFICE of the United States, a Certificate of the REGISTER OF THE LAND OFFICE at *St Louis* whereby it appears that full payment has been made by the said *Charles D Colman* according to the provisions of the Act of Congress of the 24th of April, 1820, entitled "An act making further provision for the sale of the Public Lands," for *the South West quarter of Section twenty two in Township forty north of Range six West in the District of Lands subject to sale at St Louis Missouri containing one hundred and sixty acres*

according to the official plat of the Survey of the said Lands, returned to the General Land Office by the SURVEYOR GENERAL, which said tract ha*s* been purchased by the said *Charles D Colman*

NOW KNOW YE, That the United States of America, in consideration of the premises, and in conformity with the several acts of Congress in such case made and provided, HAVE GIVEN AND GRANTED, and by these presents DO GIVE AND GRANT, unto the said *Charles D Colman*

and to *his* heirs, the said tract above described: To have and to hold the same, together with all the rights, privileges, immunities, and appurtenances, of whatsoever nature, thereunto belonging, unto the said *Charles D Colman* and to *his* heirs and assigns forever.

In Testimony Whereof, I, *James Buchanan* PRESIDENT OF THE UNITED STATES OF AMERICA, have caused these Letters to be made PATENT, and the SEAL of the GENERAL LAND OFFICE to be hereunto affixed.

GIVEN under my hand, at the CITY OF WASHINGTON, the *third* day of *May* in the year of our Lord one thousand eight hundred and *fifty eight* and of the INDEPENDENCE OF THE UNITED STATES the *Eighty second*

BY THE PRESIDENT: *James Buchanan*
By *J I Albright* Secretary.

*J N Granger* Recorder of the General Land Office

EXHIBIT
4

# THE UNITED STATES OF AMERICA,

CERTIFICATE
No. 27467

*To all to whom these presents shall come, Greeting:*

**Whereas** Charles D Colman of St Louis County Missouri

ha_ deposited in the GENERAL LAND OFFICE of the United States, a Certificate of the REGISTER OF THE LAND OFFICE at St Louis whereby it appears that full payment has been made by the said

Charles D Colman

according to the provisions of the Act of Congress of the 24th of April, 1820, entitled "An act making further provision for the sale of the Public Lands," for the South West quarter of Section twenty two in Township forty north of Range six West in the District of Lands subject to sale at St Louis Missouri containing one hundred and sixty acres

according to the official plat of the Survey of the said Lands, returned to the General Land Office by the SURVEYOR GENERAL, which said tract ha_ been purchased by the said Charles D Colman

NOW KNOW YE, That the **United States of America**, in consideration of the premises, and in conformity with the several acts of Congress in such case made and provided, HAVE GIVEN AND GRANTED, and by these presents DO GIVE AND GRANT, unto the said

Charles D Colman

and to his heirs, the said tract above described: To have and to hold the same, together with all the rights, privileges, immunities, and appurtenances, of whatsoever nature, thereunto belonging, unto the said

Charles D Colman

and to his heirs and assigns forever.

**In Testimony Whereof, I,** James Buchanan PRESIDENT OF THE UNITED STATES OF AMERICA, have caused these Letters to be made PATENT, and the SEAL of the GENERAL LAND OFFICE to be hereunto affixed.

GIVEN under my hand, at the CITY OF WASHINGTON, the third day of May in the year of our Lord one thousand eight hundred and fifty eight and of the INDEPENDENCE OF THE UNITED STATES the Eighty second.

BY THE PRESIDENT: James Buchanan

By J I Albright

J N Granger Recorder of the General

EXHIBIT
5

in Book 2 page 402. _____

In testimony whereof I have to same at the date thereof
affixed my official seal, at office in the City of Jefferson
this fifth day of January 1866.

Filed Jan 13th 1866   Sample Orr, Register of Lands

_____

The State of Missouri   City of Jefferson   Register's Office.
To all to whom these presents shall come greeting Whereas the
State and County taxes on the following described real estate
lying and being in the County of Gasconade in the State of
Missouri and which were assessed in the name of the person
hereinafter party remained due the State and County, amounting
to the sum of four dollars and fourteen cents including the
interest and other incidental cost to wit

[table of land description]

And the Register of Lands of said State having on the first
Monday of July A.D. 1862 advertised the real estate for sale
according to law to pay and satisfy said taxes _____
and the said State taxes remaining due and _____
_____ Monday in October in the year of our __
Lord one thousand eight hundred and sixty two and when
_____ Justin Richmond the Collector of said County did proceed
by expose to sale and did sell the said several tracts ___
highest for the largest interest and sale thereon before the Court
house door of said County and thereupon on the day last
aforesaid at the place aforesaid Jacob Justus became the
purchaser of said real estate for the taxes interest and cost
thereon he being the lowest bidder for the sum of one dollar
and fourteen cents due the _____ of the year eighteen hundred
and fifty four as to tract as above described _____
_____ said sold separately for the amount _____
the same   Now therefore I Sample Orr as Register of Lands
of the State of Missouri in consideration _____
_____ by the authority of an Act of the General Assembly
of said State in that case made and provided have
granted bargained and sold and by these presents do grant
bargain and sell unto the said Jacob Justus and to
his heirs and assigns _____

EXHIBIT
6

thereof to be made by the grantee. To have and to hold the aforesaid granted bargained and sold real estate unto the said Jacob Jordan and to his heirs and assigns forever.

In Testimony whereof I have hereunto set my hand & affixed the seal of Register of Lands of the State of Missouri, at the City of Jefferson, this sixteenth day of November in the year of our Lord one thousand eight hundred and sixty four.

Sample Orr, Register of Lands.

I, Sample Orr, Register of Lands for the State of Missouri, do hereby certify that the within tax deed is duly recorded in my office in Book T page 363 according to law at the date thereof. In testimony whereof I have hereunto set my hand and affixed my official seal at office in the City of Jefferson, this 16th day of November 1864.

Sample Orr, Register of Lands

Filed Jan 13th 1866. Geo. Westhoff, Recorder. J. C. England D.R.



EXHIBIT

7

 *First American Title™*

# ALTA COMMITMENT FOR TITLE INSURANCE
## issued by
## FIRST AMERICAN TITLE

### NOTICE

**IMPORTANT - READ CAREFULLY:** THIS COMMITMENT IS AN OFFER TO ISSUE ONE OR MORE TITLE INSURANCE POLICIES. ALL CLAIMS OR REMEDIES SOUGHT AGAINST THE COMPANY INVOLVING THE CONTENT OF THIS COMMITMENT OR THE POLICY MUST BE BASED SOLELY IN CONTRACT.

THIS COMMITMENT IS NOT AN ABSTRACT OF TITLE, REPORT OF THE CONDITION OF TITLE, LEGAL OPINION, OPINION OF TITLE, OR OTHER REPRESENTATION OF THE STATUS OF TITLE. THE PROCEDURES USED BY THE COMPANY TO DETERMINE INSURABILITY OF THE TITLE, INCLUDING ANY SEARCH AND EXAMINATION, ARE PROPRIETARY TO THE COMPANY, WERE PERFORMED SOLELY FOR THE BENEFIT OF THE COMPANY, AND CREATE NO EXTRACONTRACTUAL LIABILITY TO ANY PERSON, INCLUDING A PROPOSED INSURED.

THE COMPANY'S OBLIGATION UNDER THIS COMMITMENT IS TO ISSUE A POLICY TO A PROPOSED INSURED IDENTIFIED IN SCHEDULE A IN ACCORDANCE WITH THE TERMS AND PROVISIONS OF THIS COMMITMENT. THE COMPANY HAS NO LIABILITY OR OBLIGATION INVOLVING THE CONTENT OF THIS COMMITMENT TO ANY OTHER PERSON.

### COMMITMENT TO ISSUE POLICY

Subject to the Notice; Schedule B, Part I - Requirements; Schedule B, Part II - Exceptions; and the Commitment Conditions, First American Title, a Kansas Corporation (the "Company"), commits to issue the Policy according to the terms and provisions of this Commitment. This Commitment is effective as of the Commitment Date shown in Schedule A for each Policy described in Schedule A, only when the Company has entered in Schedule A both the specified dollar amount as the Proposed Amount of Insurance and the name of the Proposed Insured.

If all of the Schedule B, Part I - Requirements have not been met within six months after the Commitment Date, this Commitment terminates and the Company's liability and obligation end.

FIRST AMERICAN TITLE INSURANCE COMPANY

By: _____
Kenneth D. DeGiorgio, President

By: _____
Lisa W. Cornehl, Secretary

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First American Title. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I - Requirements; and Schedule B, Part II - Exceptions*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

Form 50201429 (2-6-23)

EXHIBIT

8

24-6946

*First American Title*™

## COMMITMENT CONDITIONS

1. DEFINITIONS
   a. "Discriminatory Covenant":   Any covenant, condition, restriction, or limitation that is unenforceable under applicable law because it illegally discriminates against a class of individuals based on personal characteristics such as race, color, religion, sex, sexual orientation, gender identity, familial status, disability, national origin, or other legally protected class.
   b. "Knowledge" or "Known":  Actual knowledge or actual notice, but not constructive notice imparted by the Public Records.
   c. "Land":  The land described in Item 5 of Schedule A and improvements located on that land that by State law constitute real property.  The term "Land" does not include any property beyond that described in Schedule A, nor any right, title, interest, estate, or easement in any abutting street, road, avenue, alley, lane, right-of-way, body of water, or waterway, but does not modify or limit the extent that a right of access to and from the Land is to be insured by the Policy.
   d. "Mortgage":  A mortgage, deed of trust, trust deed, security deed, or other real property security instrument, including one evidenced by electronic means authorized by law.
   e. "Policy":  Each contract of title insurance, in a form adopted by the American Land Title Association, issued or to be issued by the Company pursuant to this Commitment.
   f. "Proposed Amount of Insurance":  Each dollar amount specified in Schedule A as the Proposed Amount of Insurance of each Policy to be issued pursuant to this Commitment.
   g. "Proposed Insured":  Each person identified in Schedule A as the Proposed Insured of each Policy to be issued pursuant to this Commitment.
   h. "Public Records":  The recording or filing system established under State statutes in effect at the Commitment Date under which a document must be recorded or filed to impart constructive notice of matters relating to the Title to a purchaser for value without Knowledge.  The term "Public Records" does not include any other recording or filing system, including any pertaining to environmental remediation or protection, planning, permitting, zoning, licensing, building, health, public safety, or national security matters.
   i. "State":  The state or commonwealth of the United States within whose exterior boundaries the Land is located. The term "State" also includes the District of Columbia, the Commonwealth of Puerto Rico, the U.S. Virgin Islands, and Guam.
   j. "Title":  The estate or interest in the Land identified in Item 3 of Schedule A.

2. If all of the Schedule B, Part I - Requirements have not been met within the time period specified in the Commitment to Issue Policy, this Commitment terminates and the Company's liability and obligation end.

3. The Company's liability and obligation is limited by and this Commitment is not valid without:
   a. the Notice;
   b. the Commitment to Issue Policy;
   c. the Commitment Conditions;
   d. Schedule A;
   e. Schedule B, Part I - Requirements;
   f. Schedule B, Part II - Exceptions; and

4. COMPANY'S RIGHT TO AMEND
   The Company may amend this Commitment at any time.  If the Company amends this Commitment to add a defect, lien, encumbrance, adverse claim, or other matter recorded in the Public Records prior to the Commitment Date, any liability of the Company is limited by Commitment Condition 5.  The Company is not liable for any other amendment to this Commitment.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First American Title. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I - Requirements; and Schedule B, Part II - Exceptions*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use.  All other uses are prohibited.
Reprinted under license from the American Land Title Association.

AMERICAN
LAND TITLE
ASSOCIATION

Form 50201429 (2-6-23)                                                                          24-6946

 **First American Title™**

5. **LIMITATIONS OF LIABILITY**
   a. The Company's liability under Commitment Condition 4 is limited to the Proposed Insured's actual expense incurred in the interval between the Company's delivery to the Proposed Insured of the Commitment and the delivery of the amended Commitment, resulting from the Proposed Insured's good faith reliance to:
      i.   comply with the Schedule B, Part I - Requirements;
      ii.  eliminate, with the Company's written consent, any Schedule B, Part II - Exceptions; or
      iii. acquire the Title or create the Mortgage covered by this Commitment.
   b. The Company is not liable under Commitment Condition 5.a. if the Proposed Insured requested the amendment or had Knowledge of the matter and did not notify the Company about it in writing.
   c. The Company is only liable under Commitment Condition 4 if the Proposed Insured would not have incurred the expense had the Commitment included the added matter when the Commitment was first delivered to the Proposed Insured.
   d. The Company's liability does not exceed the lesser of the Proposed Insured's actual expense incurred in good faith and described in Commitment Condition 5.a. or the Proposed Amount of Insurance.
   e. The Company is not liable for the content of the Transaction Identification Data, if any.
   f. The Company is not obligated to issue the Policy referred to in this Commitment unless all of the Schedule B, Part I - Requirements have been met to the satisfaction of the Company.
   g. The Company's liability is further limited by the terms and provisions of the Policy to be issued to the Proposed Insured.

6. **LIABILITY OF THE COMPANY MUST BE BASED ON THIS COMMITMENT; CHOICE OF LAW AND CHOICE OF FORUM**
   a. Only a Proposed Insured identified in Schedule A, and no other person, may make a claim under this Commitment.
   b. Any claim must be based in contract under the State law of the State where the Land is located and is restricted to the terms and provisions of this Commitment. Any litigation or other proceeding brought by the Proposed Insured against the Company must be filed only in a State or federal court having jurisdiction.
   c. This Commitment, as last revised, is the exclusive and entire agreement between the parties with respect to the subject matter of this Commitment and supersedes all prior commitment negotiations, representations, and proposals of any kind, whether written or oral, express or implied, relating to the subject matter of this Commitment.
   d. The deletion or modification of any Schedule B, Part II - Exception does not constitute an agreement or obligation to provide coverage beyond the terms and provisions of this Commitment or the Policy.
   e. Any amendment or endorsement to this Commitment must be in writing.
   f. When the Policy is issued, all liability and obligation under this Commitment will end and the Company's only liability will be under the Policy.

7. **IF THIS COMMITMENT IS ISSUED BY AN ISSUING AGENT**
   The issuing agent is the Company's agent only for the limited purpose of issuing title insurance commitments and policies. The issuing agent is not the Company's agent for closing, settlement, escrow, or any other purpose.

8. **PRO-FORMA POLICY**
   The Company may provide, at the request of a Proposed Insured, a pro-forma policy illustrating the coverage that the Company may provide. A pro-forma policy neither reflects the status of Title at the time that the pro-forma policy is delivered to a Proposed Insured, nor is it a commitment to insure.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First American Title. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I - Requirements; and Schedule B, Part II - Exceptions*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.

Form 50201429 (2-6-23)

24-6946



*First American Title*™

9. CLAIMS PROCEDURES
    This Commitment incorporates by reference all Conditions for making a claim in the Policy to be issued to the Proposed Insured.  Commitment Condition 9 does not modify the limitations of liability in Commitment Conditions 5 and 6.

10. CLASS ACTION
    ALL CLAIMS AND DISPUTES ARISING OUT OF OR RELATING TO THIS COMMITMENT, INCLUDING ANY SERVICE OR OTHER MATTER IN CONNECTION WITH ISSUING THIS COMMITMENT, ANY BREACH OF A COMMITMENT PROVISION, OR ANY OTHER CLAIM OR DISPUTE ARISING OUT OF OR RELATING TO THE TRANSACTION GIVING RISE TO THIS COMMITMENT, MUST BE BROUGHT IN AN INDIVIDUAL CAPACITY.  NO PARTY MAY SERVE AS PLAINTIFF, CLASS MEMBER, OR PARTICIPANT IN ANY CLASS OR REPRESENTATIVE PROCEEDING.  ANY POLICY ISSUED PURSUANT TO THIS COMMITMENT WILL CONTAIN A CLASS ACTION CONDITION.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First American Title. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I - Requirements; and Schedule B, Part II - Exceptions*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use.  All other uses are prohibited.
Reprinted under license from the American Land Title Association.



AMERICAN
LAND TITLE
ASSOCIATION

Form 50201429 (2-6-23)

24-6946

 **First American Title™**

**Commitment for Title Insurance**
**Missouri - 2021 v. 01.00 (07-01-2021)**

**Transaction Identification Data, for which the Company assumes no liability as set forth in Commitment Condition 5.e.:**

Issuing Agent:          Gasconade County Abstract Co., Inc.
Issuing Office:          118 East Fourth Street, Hermann, MO 65041
Issuing Office's ALTA® Registry ID:  1028128
Loan ID No.:          TBD
Commitment No.:          24-6946
Issuing Office File No.:  24-6946
Property Address:        4563 Hwy B, Bland, MO 65014

## SCHEDULE A

1.  Commitment Date:  August 5, 2024 at 08:00 AM

2.  Policy to be issued:

    a.  ALTA Loan Policy 2021
        Proposed Insured:   The Maries County Bank
        Proposed Amount of Insurance:      $TBD
        The estate or interest to be insured:   Fee Simple

3.  The estate or interest in the Land at the Commitment Date is:

    Fee Simple

4.  The Title is, at the Commitment Date, vested in:

    Robert  G. Martin and Genevieve Martin, husband and wife, and Paul G. Safarik and Patricia S. Safarik, husband and wife

    Note:  Vesting is shown for convenience purposes only and will not be insured without requirement 8 on Schedule B1 hereof being met.

5.  The Land is described as follows:

    That part of the North half of the Southwest Quarter lying West of Missouri Route B in Section 22, Township 40 North, Range 6 West of the 5th P.M. in Gasconade County, Missouri.

Countersigned:

*Lisa D. Brandt*

_____
Lisa D. Brandt, Authorized Signatory
Gasconade County Abstract Co., Inc.
118 E. Fourth Street
Hermann, MO 65041
573-486-2925 Phone
573-486-2059 Fax

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First American Title. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I - Requirements; and Schedule B, Part II - Exceptions.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use.  All other uses are prohibited.
Reprinted under license from the American Land Title Association.



Form 50201429 (2-6-23)                                                                  24-6946

 **First American Title™**

Commitment for Title Insurance
Missouri - 2021 v. 01.00 (07-01-2021)

## SCHEDULE B, PART I - REQUIREMENTS

All of the following Requirements must be met:

1.  The Proposed Insured must notify the Company in writing of the name of any party not referred to in this Commitment who will obtain an interest in the Land or who will make a loan on the Land. The Company may then make additional Requirements or Exceptions.

2.  Pay the agreed amount for the estate or interest to be insured.

3.  Pay the premiums, fees, and charges for the Policy to the Company.

4.  Documents satisfactory to the Company that convey the Title or create the Mortgage to be insured, or both, must be properly authorized, executed, delivered, and recorded in the Public Records.

5.  Pay the full consideration to, or for the account of, the grantors or mortgagors.

6.  Pay all taxes, charges, assessments, levied and assessed against subject premises, which are due and payable.

7.  **If there has been construction, improvements or repairs to or on the property in the last 12 months, or a portion or all of the loan proceeds will be used for such, then unrecorded mechanics lien coverage will not be furnished unless arrangements are made prior to closing. If the property is 1-4 family residential and we are being asked to extend mechanic's lien coverage (through date downs or otherwise) on a construction loan, a Mechanic's Lien Indemnity Agreement secured by a satisfactory Letter of Credit will need to be furnished to the company.  If the transaction is not a residential construction loan, either the aforesaid secured indemnity or satisfactory financial statements, indemnities, affidavits and possibly lien waivers, will need to be furnished to the company.  Failure to notify the company in writing before closing will invalidate any mechanic's lien coverage given in the policy.**

8.  A Patent should be obtained from the United States Government and placed of record. The patent on the Southwest Quarter of Section 22, Township 40 North, Range 6 West was cancelled in 1860. Therefore, title would vest in the United States Government until such time as the patent is obtained and recorded as one cannot claim adversely against a governmental entity.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First American Title. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I - Requirements; and Schedule B, Part II - Exceptions*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use.  All other uses are prohibited.
Reprinted under license from the American Land Title Association.

Form 50201429 (2-6-23)                                                                                  24-6946

## SCHEDULE B
(Continued)

## SCHEDULE B, PART II - EXCEPTIONS

**Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law. This Commitment and the Policy treat any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated. Only the remaining provisions of the document will be excepted from coverage.**

The Policy will not insure against loss or damage resulting from the terms and conditions of any lease or easement identified in Schedule A, and will include the following Exceptions unless cleared to the satisfaction of the Company:

1.    Any defect, lien, encumbrance, adverse claim, or other matter that appears for the first time in the Public Records or is created, attaches, or is disclosed between the Commitment Date and the date on which all of the Schedule B, Part I - Requirements are met.

2.    Rights or claims of parties in possession not shown by the Public Records

3.    Easements, or claims of easements, not shown by the Public Records.

4.    Any encumbrance, violation, variation or adverse circumstance, boundary line overlap, or encroachment (including an encroachment of an improvement across the boundary lines of the Land), that would be disclosed by an accurate and complete land title survey of the Land or that could be ascertained by an inspection of the Land.

5.    Any lien, or right to lien, for services, labor, material, or equipment heretofore or hereafter furnished, imposed by law, unless such lien is shown by the Public Records at Date of Policy.

6.    Taxes or special assessments which are not shown as existing liens by the Public Records.

7.    The lien of the General Taxes for the year 2024, and thereafter.

8.    Existing easements for public roads and public utilities now in use.

9.    Conveyance to the State of Missouri for highway purposes as per Book 79 page 547.

10.    The Land described in this policy does not include any mobile or manufactured home located thereon.

11.    TAX DATA FOR INFORMATIONAL PURPOSES ONLY AND IS NOT INSURED. Real estate taxes for the year 2023 and prior years have been paid. Amount 2023 - $251.04 for Parcel ID No. 21-5.0-22-0-00-008.000

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by First American Title. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I - Requirements; and Schedule B, Part II - Exceptions*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.

AMERICAN
LAND TITLE
ASSOCIATION

Form 50201429 (2-6-23)                                                                                              24-6946

First American Title™

## Privacy Notice

**Last Updated and Effective Date**: December 1, 2023

First American Financial Corporation and its subsidiaries and affiliates (collectively, "First American," "we," "us," or "our") describe in our full privacy policy ("Policy"), which can be found at https://www.firstam.com/privacy-policy/, how we collect, use, store, and disclose your personal information when: (1) when you access or use our websites, mobile applications, web-based applications, or other digital platforms where the Policy is posted ("Sites"); (2) when you use our products and services ("Services"); (3) when you communicate with us in any manner, including by e-mail, in-person, telephone, or other communication method ("Communications"); (4) when we obtain your information from third parties, including service providers, business partners, and governmental departments and agencies ("Third Parties"); and (5) when you interact with us to conduct business dealings, such as the personal information we obtain from business partners and service providers and contractors who provide us certain business services ("B2B"). This shortened form of the Policy describes some of the terms contained in the Policy.

The Policy applies wherever it is posted. To the extent a First American subsidiary or affiliate has different privacy practices, such entity shall have their own privacy statement posted as applicable.

Please note that the Policy does not apply to any information we collect from job candidates and employees. Our employee and job candidate privacy policy can be found here.

**What Type Of Personal Information Do We Collect About You?** We collect a variety of categories of personal information about you. To learn more about the categories of personal information we collect, please visit https://www.firstam.com/privacy-policy/.

**How Do We Collect Your Personal Information?** We collect your personal information: (1) directly from you; (2) automatically when you interact with us; and (3) from other parties, including business parties and affiliates.

**How Do We Use Your Personal Information?** We may use your personal information in a variety of ways, including but not limited to providing the services you have requested, fulfilling your transactions, complying with relevant laws and our policies, and handling a claim. To learn more about how we may use your personal information, please visit https://www.firstam.com/privacy-policy/.

**How Do We Disclose Your Personal Information?** We do not sell your personal information or share your personal information for cross-context behavioral advertising. We may, however, disclose your personal information, including to subsidiaries, affiliates, and to unaffiliated parties, such as service providers and contractors: (1) with your consent; (2) in a business transfer; (3) to service providers and contractors; (4) to subsidiaries and affiliates; and (5) for legal process and protection. To learn more about how we disclose your personal information, please visit https://www.firstam.com/privacy-policy/.

**How Do We Store and Protect Your Personal Information?** The security of your personal information is important to us. That is why we take all commercially reasonable steps to make sure your personal information is protected. We use our best efforts to maintain commercially reasonable technical, organizational, and physical safeguards, consistent with applicable law, to protect your personal information.

**How Long Do We Keep Your Personal Information?** We keep your personal information for as long as necessary in accordance with the purpose for which it was collected, our business needs, and our legal and regulatory obligations.

**Your Choices** We provide you the ability to exercise certain controls and choices regarding our collection, use, storage, and disclosure of your personal information. You can learn more about your choices by visiting https://www.firstam.com/privacy-policy/.

© 2024 First American Financial Corporation and/or its affiliates. All rights reserved. NYSE:FAF

 *First American Title*™

**International Jurisdictions**: Our Services are offered in the United States of America (US), and are subject to US federal, state, and local law. If you are accessing the Services from another country, please be advised that you may be transferring your information to us in the US, and you consent to that transfer and use of your information in accordance with the Policy. You also agree to abide by the applicable laws of applicable US federal, state, and local laws concerning your use of the Services, and your agreements with us.

**Changes to Our Policy**: We may change the Policy from time to time. Any and all changes to the Policy will be reflected on this page and in the full Policy, and where appropriate provided in person or by another electronic method. **YOUR CONTINUED USE, ACCESS, OR INTERACTION WITH OUR SERVICES OR YOUR CONTINUED COMMUNICATIONS WITH US AFTER THIS NOTICE HAS BEEN PROVIDED TO YOU WILL REPRESENT THAT YOU HAVE READ AND UNDERSTOOD THE POLICY.**

**For California Residents**

If you are a California resident, you may have certain rights under California law, including but not limited to the California Consumer Privacy Act of 2018, as amended by the California Privacy Rights Act and its implementing regulations. To learn more, please visit https://www.firstam.com/privacy-policy/.

**Contact Us**: dataprivacy@firstam.com or toll free at 1-866-718-0097.

© 2024 First American Financial Corporation and/or its affiliates. All rights reserved. NYSE:FAF

# GASCONADE COUNTY ABSTRACT CO., INC.
## *Since 1936*

526 East Washington
Owensville, MO 65066
Ph:  573-437-2828
Fax: 573-437-7828

118 E. Fourth Street
Hermann, MO 65041
Ph:  573-486-2925
Fax: 573-486-2059

## PRIVACY POLICY

### We Are Committed to Safeguarding Customer Information

In order to better serve your needs now and in the future, we may ask you to provide us with certain information.  We understand that you may be concerned about what we will do with such information - particularly any personal or financial information.  We agree that you have a right to know how we will utilize the personal information you provide to us.  Therefore, we have adopted this Privacy Policy to govern the use and handling of your personal information.

### Applicability

This Privacy Policy governs our use of the information which you provide to us.  It does not govern the manner in which we may use information we have obtained from any other source, such as information obtained from a public record or from another person or entity.

### Types of Information

Depending upon which of our services you are utilizing, the types of nonpublic personal information that we may collect include:
!        Information we received from you on applications, forms and in other communications to us, whether in writing, in person, by telephone or any other means;
!        Information about your transactions with us, our affiliated companies, or others; and
!        Information we receive from a consumer reporting agency

### Use of Information

We request information from you for our own legitimate business purposes and not for the benefit of any nonaffiliated party.  Therefore, we will not release your information to nonaffiliated parties except; (1) as necessary for us to provide the product or service you have requested of us; or (2) as permitted by law.  We may, however, store such information indefinitely, including the period after which any customer relationship has ceased.  Such information may be used for any internal purpose, such as quality control efforts or customer analysis.  We may also provide all of the types of nonpublic personal information listed above to one or more of our affiliated companies.  Such affiliated companies include financial service providers, such as title insurers, property and casualty insurers, and trust and investment advisory companies, or companies involved in real estate services, such as appraisal companies, home warranty companies, and escrow companies.  Furthermore, we may also provide all the information we collect, as described above, to companies that perform marketing services on our behalf, on behalf of our affiliated companies, or to other financial institutions with whom we or our affiliated companies have joint marketing agreements.

### Former Customers

Even if you are no longer our customer, our Privacy Policy will continue to apply to you.

### Confidential and Security

We will use our best efforts to ensure that no unauthorized parties have access to any of your information.  We restrict access to nonpublic personal information about you to those individuals and entities who need to know that information to provide products or services to you.  We will use our best efforts to train and oversee our employees and agents to ensure that your information will be handled responsibly and in accordance with this Privacy Policy.  We currently maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.